UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>OLEKSANDR DIDENKO,<br><br>                Defendant. | Criminal No. 24-cr-261 (RDM) |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, **OLEKSANDR DIDENKO**, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea – that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### Background

1. Since 2003, the Democratic People's Republic of North Korea ("DPRK" or "North Korea") has been under sanction by the United Nations ("UN") due to testing and expansion of its nuclear weapons program. Since 2016, the United States has had comprehensive sanctions against North Korea, cutting it off from the U.S. financial system and limiting the ability of U.S. persons and companies to do business with North Koreans. As a result, North Korea has sponsored various subterfuge schemes to earn money for the regime.

2. North Korea has dispatched thousands of information technology ("IT") workers around the world, who misrepresent themselves as foreign (non-North Korean) teleworkers, earning revenue that contributes to North Korean weapons programs.

3. The Department of Homeland Security ("DHS") U.S. Citizenship and Immigrations Services ("USCIS") is the federal agency responsible for ensuring employment

eligibility for workers in the U.S. DHS and USCIS are located in the District of Columbia. To confirm an employee's eligibility for employment in the U.S., employers are required by federal law to complete a Form I-9, Employment Eligibility Verification ("Form I-9") or submit the employee information to E-Verify, a web-based system run by USCIS.

4. The Internal Revenue Service ("IRS") is the federal agency responsible for collection of taxes from U.S. employers and employees. IRS is located in the District of Columbia.

5. The Social Security Administration ("SSA") is the federal agency responsible for administering retirement, disability, survivor, and family benefits and enrolling eligible individuals in Medicare.

## Scheme to Defraud the U.S. Government

6. From in or about 2018 until on or about May 10, 2024, DIDENKO, a Ukrainian national who was then located in Ukraine, conspired with certain overseas IT workers and individuals located in the United States and elsewhere, to affect a scheme to defraud the United States and its agencies to generate revenue for the overseas IT workers and their associates, and to generate revenue for DIDENKO.

7. The overseas IT workers, with the assistance of DIDENKO, stole the identities of U.S. nationals or otherwise convinced U.S. persons to loan the overseas IT workers their identities for money and applied for remote jobs in the United States using those false identities and causing the transmission of false documentation to DHS. The IT workers obtained jobs in at least 40 U.S. companies, to include Fortune 500 companies. Beginning in at least September of 2021, through up to and including May 16, 2024, DIDENKO ran a website using a U.S.-based domain, "Upworksell.com," for the purposes of facilitating and allowing overseas IT workers to buy or rent stolen or borrowed identities belonging to real individuals and pose as these persons on online

freelance work platforms.[1] Using these stolen or borrowed identities offered on Upworksell.com, the IT workers were able to fraudulently obtain work from companies located in countries such as the United States in which they would not otherwise be eligible to legally work. In order to facilitate this fraud, DIDENKO facilitated the creation of fake documentation, to include fake passports, as well as hiring individuals to pose as the IT worker to their employer, all so that the IT worker's employer was unaware that they are being defrauded. DIDENKO maintained a spreadsheet of the accounts he had created under the scheme, which has thousands of entries.

8. Through Upworksell.com, DIDENKO also provided access to proxy financial accounts, including online Money Service Transmitters (MSTs) based in California, New York, and overseas ("Overseas MST-1"). These MSTs operate on the internet and permit users to send and receive funds and have access to the U.S. financial system without having to open an account at a brick-and-mortar bank. Some of these MSTs offer virtual bank accounts connected to the U.S. financial system and the ability to transfer funds internationally. Having such accounts allowed remote workers to receive payments from U.S.-based employers domestically and thus can give them the appearance of being located in the United States by obfuscating their true location.

9. DIDENKO also utilized individuals in the United States to receive and host laptop computers and other hardware from U.S. companies at multiple residences located throughout the U.S., including Virginia, Tennessee, Arizona, and California, through which the overseas IT

---

[1] Online freelance work platforms help facilitate the business relationship between independent remote IT workers and the hiring employers. These platforms provide a mechanism for employers to advertise jobs, connect with prospective employees, and hire on a contract basis. IT workers are able to create free accounts on the platforms and bid for contracts by providing legal identification documents and banking information. The platforms also allow employers to track and document the progress of a project. IT workers must meet project milestones to receive payment. Paychecks are held in escrow accounts and released once the employer has verified the freelance IT worker has completed the required tasks.

workers gained access to the internal systems of the U.S. companies. DIDENKO's U.S.-based coconspirators were typically paid $100 per month for each laptop they hosted.

10. DIDENKO's overseas IT worker coconspirators were paid hundreds of thousands of dollars for their work, much of which has been falsely reported to the IRS and SSA in the name of actual U.S. persons whose identities have been false, stolen, or borrowed.

11. The conspiracy impacted at least 40 U.S. companies, compromised more than 18 identities of U.S. persons, caused false information to be conveyed to the DHS on at least than 15 occasions, and created false tax liabilities for more than 13a U.S. persons.

### Creation of False Proxy User Accounts

12. Between in or around 2018, until on or about May 10, 2024, DIDENKO and his coconspirators created, including through the use of wire communications in interstate or foreign commerce, 869 "proxy identities," which used the means of identification of another person, which he thereafter associated with accounts at U.S. and overseas providers and MSTs ("false proxy accounts"), and facilitated the same through the use of false identity documents that also used the means of identification of another person, and the accounts were later sold to UpworkSell customers.

### Creation of the UpworkSell Website

13. On or about September 6, 2021, DIDENKO registered the website for his company, UpworkSell, with a U.S. provider through a wire communication in interstate commerce. The website advertised the ability for remote IT workers to buy or rent accounts in the name of identities other than their own, including:

    i. on online freelance IT job platforms, which allow users to advertise thereon as "gig" workers, *i.e.*, to create free accounts, advertise their

        skills, and bid on IT work contracts including: (1) "U.S. Platform-1", located in California; (2) "U.S. Platform-2", located in Pennsylvania; and (3) "Overseas Platform-1," located abroad;

    ii.    on online MSTs, which operate on the internet and permit users to send and receive funds and have access to the U.S. financial system without having to open an account at a brick-and-mortar bank online, including: (1) "U.S. MST-1", located in California; (2) "U.S. MST-2", located in New York; and (3) "Overseas MST-1", located abroad but operating in New York for U.S. dollar transactions; and

    iii.    for "Credit Cards" located in the United States and Europe.

**DIDENKO's Connection to North Korean IT Workers and Other Enablers**

14. Between in or around August 2022, through in or around November 2023, a group of North Korean IT workers stored a set of files related to an IT worker scheme in an online repository. These files included documents about how to circumvent U.S. laws regarding employment eligibility and obtain employment in the United States as remote workers, including guides and tips related to topics about writing a cover letter and building a resume, sample resumes, scripts for interviews, a scanned copy of a stolen U.S. Permanent Resident Card, and various other files. Included in these documents were:

    i.    A document titled "Account Sellers," which listed DIDENKO as one of the six "account sellers" used by this North Korean IT Worker group, and included DIDENKO's contact information (email, phone, and social media accounts).

5

        ii.        59 job postings, including three postings for jobs at U.S. companies that were later filled by North Korean IT Workers posing as U.S. persons and operating through a laptop farm run by U.S. citizen Christina CHAPMAN. CHAPMAN also hosted computers for at least three additional U.S. person identities associated with this same group of North Korean IT workers.

15.    Between approximately in or about August 2018 and in or about May 2022, approximately 24 coconspirator overseas IT workers with U.S. MST-2 accounts based in Dandong, China, a city on the border of Shinuiju, North Korea, sent DIDENKO approximately 175 payments, including through wire communications in interstate commerce, in furtherance of the scheme.

16.    On or about November 30, 2021, DIDENKO's coconspirator customer, Piety, exchanged communications via wires in interstate commerce with CHAPMAN and asked CHAPMAN to deposit into a bank account at a U.S. financial institution a paycheck issued in the name of a U.S. person issued for work done by an overseas IT worker at the U.S. company. Piety told CHAPMAN that the bank account was in the name of "Anastasiia [D.]", a purported Ukrainian national and the same identity used by DIDENKO to create a false proxy identity account at U.S. MST-2.

17.    Between on or about October 10, 2022, and on or about March 29, 2023, DIDENKO's coconspirator customer Piety requested CHAPMAN ship laptop computers from U.S. businesses to JOHN DOE 3, alias CHUNJI JIN, in Dandong, China, which CHAPMAN did ship on approximately 21 occasions.

18.    On or about February 2, 2023, DIDENKO's coconspirator customer Piety

instructed CHAPMAN to ship a laptop computer to a shipping service access point in Virginia, for pick up by Individual 1, who worked at DIDENKO's Virginia laptop farm.

19.    On or about October 3, 2023, a conspirator IT worker and customer of DIDENKO's ("Customer-7") stated that they were unhappy with the service at DIDENKO's laptop farm and instructed DIDENKO to send a laptop issued by a U.S. Company from DIDENKO's Virginia laptop farm to CHAPMAN.

**Sale and Use of False Proxy False Accounts Utilizing Wires in Interstate Commerce**

20.    Between in or about January 30, 2020, and January 2, 2024, DIDENKO exchanged with UpworkSell customers (i.e., the overseas IT workers) through wire communications in interstate commerce about the sale of false proxy accounts. On or about the following dates, coconspirator overseas IT workers, who were customers of DIDENKO and using accounts created by DIDENKO, applied for employment with U.S. companies and caused the U.S. companies to transmit false information, to include false information about U.S. persons' identities and false documents to USCIS through wire communications in interstate commerce, *i.e.*, the E-Verify system, in order to verify the overseas IT workers' employment eligibility:

| Sub-¶ | Date | U.S. Person Identity | Document 1 | State | Document 2 | Employer |
|---|---|---|---|---|---|---|
| i. | 7/19/2023 | U.S. Person-1 | State Driver's License/ID | TX | Social Security (SS) Card | U.S. Company-7 |
| ii. | 11/13/2023 | U.S. Person-1 | State Driver's License/ID | TX | SS Card | U.S. Company-6 |
| iii. | 1/2/2024 | U.S. Person-2 | State Driver's License/ID | PA | SS Card | U.S. Company-2 |
| iv. | 1/9/2024 | U.S. Person-2 | State Driver's License/ID | PA | SS Card | U.S. Company-8 |

| | | | | | | |
|---|---|---|---|---|---|---|
| v. | 2/21/2024 | U.S. Person-2 | State Driver's License/ID | PA | SS Card | U.S. Company-4 |
| vi. | 2/22/2024 | U.S. Person-2 | State Driver's License/ID | PA | SS Card | U.S. Company-9 |
| vii. | 3/6/2024 | U.S. Person-2 | State Driver's License/ID | PA | SS Card | U.S. Company-10 |
| viii. | 3/13/2024 | U.S. Person-2 | State Driver's License/ID | PA | Birth Certificate | U.S. Company-11 |
| ix. | 9/20/2023 | U.S. Person-3 | State Driver's License/ID | NY | SS Card | U.S. Company-12 |

21.  On or about the following dates, U.S. Company-5 paid a coconspirator overseas IT worker in the name of U.S. Person-1, and thereafter U.S. Company 5 sent funds in the name of U.S. Person-1 to an account with U.S. MST-2 created by DIDENKO, when in fact the real U.S. Person-1 had not performed such work:

| Sub-¶ | Date | Amount |
|---|---|---|
| i. | 9/22/2023 | $4,113.60 |
| ii. | 10/6/2023 | $3,662.49 |
| iii. | 10/20/2023 | $3,662.49 |
| iv. | 11/3/2023 | $3,580.47 |
| v. | 11/17/2023 | $3,662.49 |
| vi. | 12/1/2023 | $3,334.41 |
| vii. | 12/15/2023 | $2,999.11 |
| viii. | 12/29/2023 | $3,662.49 |
| ix. | 1/12/2024 | $3,352.93 |
| x. | 1/26/2024 | $3,352.93 |

- *Hosting Computers at U.S. Laptop Farms and Conveyance of False Location Information to U.S. Companies Over Wires in Interstate Commerce*

22. Between in or around the following dates, at the direction of DIDENKO, coconspirator overseas IT workers caused U.S. companies to send laptops and other devices issued by U.S. companies to DIDENKO's laptop farms, wherein DIDENKO's associates provided remote access to the networks of U.S.-based companies, through wire communications in interstate commerce, so that it would appear to the U.S. based company that the remote IT workers were physically located at the laptop farm address.

| Sub-¶ | Date Range | Location | Associate | Approximate Number of Computers |
|---|---|---|---|---|
| i. | August 2022 until October 2023 | Virginia Beach, Virginia | Individual 1 | 4 |
| ii. | October 2023 until March 2024 | Jefferson City, Tennessee | Individual 2 | 6 |
| iii. | October 2023 until March 2024 | Jefferson City, Tennessee | Individual 3 | 6 |
| iv. | November 2023 until April 2024 | San Diego, California | Individual 4 | 15 |
| | | | Total | 31 |

23. Between approximately in or around August 2022, until on or about May 10, 2024, coconspirator overseas IT workers obtained employment through the fraudulent use of identification, and thereafter performed or attempted to perform remote IT work for at least the following U.S. companies (including through staffing companies), while the laptops provided for this work were hosted by one of DIDENKO's laptop farms:

| Sub-¶ | U.S Person Identity | Victim Company (if known) | Laptop Location (if sent) |
|---|---|---|---|
| i. | "Arber B." | U.S. Company 21 | California |
| ii. | "Arber B." | U.S. Company 22 | California |

9

|       |                              |                         |            |
|-------|------------------------------|-------------------------|------------|
| iii.  | "Christopher H."             | U.S. Company 23         | California |
| iv.   | "Christopher H."             | U.S. Company 23         | California |
| v.    | "Guazzaloca J." OR "Martin R." | U.S. Company 24       | California |
| vi.   | "Harry T."                   | U.S. Company 25         | California |
| vii.  | "Jose H."                    | U.S. Company 26         | California |
| viii. | "Jose H."                    | U.S. Company 27         | California |
| ix.   | "Jose H."                    | U.S. Company 28         | California |
| x.    | "Josiah K."                  | U.S. Company 29         | California |
| xi.   | "Matthew M."                 | U.S. Non-profit Company 1 | California |
| xii.  | "Micheal J."                 | U.S. Company 30         | California |
| xiii. | "Raymond S."                 | U.S. Company 29         | California |
| xiv.  | "Trayvon H."                 | U.S. Company 31         | California |
| xv.   | "Trayvon H."                 | Overseas Company 5      | California |
| xvi.  | Unknown                      | U.S. Company 32         | California |
| xvii. | Unknown                      | U.S. Company 32         | California |
| xviii.| "Frank P."                   | U.S. Company 33         | Tennessee  |
| ixx.  | "Harry P."                   | U.S. State Agency 1     | Tennessee  |
| xx.   | "Kevin R."                   | U.S. Company 34         | Tennessee  |
| xxi.  | "Matthew M."                 | U.S. Company 21         | Tennessee  |
| xxii. | "Matthew M."                 | U.S. Company 23         | Tennessee  |
| xxiii.| "Matthew M."                 | U.S. Company 35         | Tennessee  |
| xxiv. | "Matthew M."                 | U.S. Company 36         | Tennessee  |
| xxv.  | "Matthew M."                 | U.S. Company 37         | Tennessee  |
| xxvi. | "Michael W."                 | U.S. Company 38         | Tennessee  |
| xxvii.| "Victor M."                  | U.S. Company 39         | Tennessee  |
| xxviii.| "Willie E."                 | [unknown]               | Tennessee  |

|  |  |  |  |
|---|---|---|---|
| ixxx. | Unknown | U.S. Company 40 | Tennessee |
| xxx. | "Harry P." | U.S. Company 41 | N/A |
| xxxi. | "Aaron T." | U.S. Company 42 | Virginia |
| xxxii. | "Aaron T." | U.S. Company 43 | N/A |
| xxxiii. | "Daniel S." | U.S. Company 44 | Virginia |
| xxxiv. | "Raymond S." | U.S. Company 45 | Virginia |
| xxxv. | "Tanya R." | U.S. Company 46 | Virginia |
| xxxvi. | "Willie E." | U.S. Company 12 | Virginia |

24. Between on or about the following dates, DIDENKO made payments through wire communications in interstate commerce to Individuals 1-3 for their services in hosting his U.S. laptop farms, usually in the amount of approximately $100 per month:

| Sub-¶ | Date Range | Associate | Payment Means | Approximate Total |
|---|---|---|---|---|
| i. | 2/3/2023 – 12/20/2023 | Individual 1 | U.S. MST-1 | $1,300 |
| ii. | 12/2/2023 – 2/19/2024 | Individual 2 | U.S. MST-1 | $430 |
| iii. | 10/20/2023 – 10/31/2023 | Individual 3 | U.S. MST-1 | $58 |
|  |  |  | *Total* | *$1,788* |

25. Between approximately on or about the following dates, coconspirator overseas IT workers sent DIDENKO U.S. dollar payments, including through wire communications in interstate commerce, for the account creation and rental services and for hosting of laptops at the U.S. laptop farms, through accounts created in DIDENKO's name at the following providers.

| Sub-¶ | Date Range | Provider | Number of Accounts | Total Payments |
|---|---|---|---|---|
| i. | 03/14/2020 – 12/21/2023 | U.S. MST-1 | 517 | $88,348.47 |
| ii. | 07/16/2018 – 06/07/2022 | U.S. MST-2 | 2,422 | $645,439.62 |
| iii. | 12/22/2021 – 12/20/2023 | Overseas MST-1 | 142 | $188,946.55 |

|  | **Total** | $922,734.64 |
|---|---|---|

26.     Between on or about April 21, 2019, and April 26, 2023, DIDENKO's coconspirator overseas IT workers sent DIDENKO U.S. dollar payments, including through wire communications in interstate commerce, for the account creation and rental services and for hosting of laptops at the U.S. laptop farms, through an U.S. MST-2 account created in the name of DIDENKO's girlfriend in the amount $497,451.00. Skype chats between DIDENKO and his coconspirator IT workers confirm that DIDENKO directed the IT workers to send him payments for the aforementioned services to the U.S. MST-2 account in his girlfriend's name.

27.     During an interview with law enforcement agents, DIDENKO's girlfriend stated that she did not recognize or use the email address assigned as the username for the U.S. MST-2 account. Further, the recovery email for the email address assigned as the username for this U.S. MST-2 account came back to an email account registered to DIDENKO. The Defendant acknowledges and agrees that the total amount of payments he received in connection with his participation in the wire fraud and aggravated identity theft schemes was $1,420,185.64.

### Aggravated Identity Theft

28.     Between approximately in or around August 2022, until on or about May 10, 2024, DIDENKO and others knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, *to wit* the true names, Social Security numbers, dates of birth, and other identifying information of stolen or otherwise obtained actual person identities, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), *to wit* conspiracy to commit wire fraud as set forth in Count One of the Indictment and conspiracy to falsely represent to be a U.S. citizen as set forth in Count Three, knowing that the means of identification belonged to another actual person, on or about the dates listed and using the identities listed in ¶¶ 20 & 23,

12

*supra.*

                          Respectfully submitted,

                          JEANINE FERRIS PIRRO
                          UNITED STATES ATTORNEY

                          */s/*

                          STEVEN B. WASSERMAN
                          Assistant United States Attorney
                          D.C. Bar No. 453251601 D Street, N.W.
                          Washington, D.C.  20579
                          Office: (202) 252-7719
                          Steve.Wasserman@usdoj.gov

**DEFENDANT'S ACKNOWLEDGEMENT**

I, Oleksandr Didenko, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11.03.2025

_____
Oleksandr Didenko
Defendant

**ATTORNEY'S ACKNOWLEDGEMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 11-3-25

_____
Christopher Davis
Attorney for Defendant