UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 24-cr-00261 (RDM) |
| | : | |
| OLEKSANDR DIDENKO | : | |
| Defendant. | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Oleksandr Didenko submits the following memorandum in aid of sentencing.

## PROCEDURAL BACKGROUND

1. On November 10, 2025, Mr. Didenko pled guilty to Counts One and Four of the indictment that has been lodged against him:

*Count 1*: Conspiracy to Commit Wire Fraud. 18 U.S.C. 1343 and 1349.

*Count 4*: Aggravated Identity Theft. 18 U.S.C. 1028A(a)(1

2. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties agree that the aggregate guidelines sentencing range is 102 to 121 months, of which 24 months is a mandatory consecutive sentence. The Government has agreed to limit their allocation to the low end of the Didenko's guideline range. The defendant has also agreed to a stipulated judicial order of removal, as he has no legal status in the United States.

## GUIDELINE ISSUES

3. There are no material objections to the Presentence Report.

## SENTENCING FACTORS

4. The core requirement of 18 U.S.C. §3553(a) is that the court impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

- The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

- the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

- the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

- the need for the sentence imposed "to *provide the defendant with needed* educational or vocational training, *medical care*, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D);

- the kinds of sentences available, 18 U.S.C. § 3553(a)(3);

- the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

- the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar

    conduct, 18 U.S.C. § 3553(a)(6);

- the need to provide restitution to any victims of the offenses, 18 U.S.C. § 3553(a)(7).

### *Variance Warranted*

*The Offense*

5. There were many moving parts to this offense. As time progressed, it morphed into a complex series of services offered to people who had no right to work in the United States. It affected many U.S. agencies, businesses, and citizens. It culminated in Chinese customers being exposed as North Koreans and defendant's arrest.

*Defendant's Characteristics*

6. Oleksandr is a kind and soft spoken man. He is a rule follower, which makes this offense more than a little shocking. **Exhibit 1.** The guards at the Alexandria Detention Center recognized these characteristics and sent counsel the unsolicited letters in Ex. 1. At the defendant's presentment before Your Honor, the U.S. Marshals approached counsel to convey their belief Didenko was a good man. During the international extradition process, they spent days with him. They were concerned about leaving him at the D.C. Jail, and in fact, aided in having him transferred to Alexandria Detention Center.

7. Oleksandr is beyond remorseful. He will address the Court at sentencing, but his letter to the Court outlines how he feels about having become involved in

3

this offense. **Exhibit 2.** This offense does not define him. It is an aberration. His friend of many years, living in Kyiv, writes about his firsthand observations of Oleksandr over the years. **Exhibit 3.**

    8. Oleksandr Didenko was cooperative from the start of his case. First with South Korean officials and then with the U.S. authorities. He entered a plea at the first opportunity presented. He has agreed to forfeit any assets he may have, which are few at this point in time. He will bear the burden of a huge financial obligation.

*Disparity as Result of Alien Status*

    9. Didenko will be excluded from many programs in the Bureau of Prisons due to his lack of status in the United States. As Probation has noted in the PSR, "a deportable alien may warrant a downward departure from the guidelines. Title 18 USC § 3642(c) authorizes the US Bureau of Prisons, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed twelve months of the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry to the community. In *Lartey v. Department of Justice*, 790 F. Supp. 130 (US District Court W *ID* LA 1992, the Court determined that the right to participate in pre-release programs only applies to prisoners who are being release to a community within the United States, thereby excluding deportable aliens.

    10. The DC Circuit has ruled that a downward departure may be appropriate

if the defendant's status as a deportable alien is likely to cause fortuitous increase in the severity of confinement. *US v. Smith*, 27 F. 3d 649, (307 US App. DC 1994).

11. For all of these reasons, Didenko requests a variance.

*Unique Circumstances Warrant a Variance*

12. Oleksandr is the product of a war torn county. Bombings occur daily. Utilities are barely functional. And when they are operating, it is for short periods of time. Defendant was his mother's life support. She now believes he is working for the Ukraine government. He communicates with her via a tablet at the jail, but she does not know he is incarcerated; though she must suspect something is not right. She needs him home. He also has special skills which would be of great assistance to the Ukraine military. His skills easily transfer to operation and training in the use of a vast array of weaponry being used in Ukraine. Didenko was educated (graduate level) by the Ukraine government, and he now feels an urgency to help his county. For all these reasons, he requests the Court to consider a further variance.

13. Oleksandr Didenko faces a two year mandatory minimum and will have two years of time served credit come early May.[1] He is not a threat to the public; he has much to offer others. On the balance, deterrence and adequate punishment

---

[1] Oleksandr Didenko spent 8 months in a Polish jail. Primarily due to a miscommunication between his lawyer and the Court there. He was house under deplorable conditions, 6 minute shower once a week, 23 hours lock down a day, and margarine and bread for meals each day. This time spent there warrant another basis for a variance.

5

do not outweigh the good this man can do for others. His remorse is sincere. To allow him to languish in prison for a lengthy period of time does not further any of the goals of 18 U.S.C 3553(a).

## CONCLUSION

Oleksandr Didenko moves this Court to sentence him as recommended in this memorandum: to a "sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this memorandum was served on counsel for the United States via the court's CM/ECF system and by email on this 9th day of February 2026.

_____/s/_____
Christopher M. Davis